[Cite as *State v. Alexander*, 2016-Ohio-34.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## DARKE COUNTY

STATE OF OHIO                                :

                             :    Appellate Case No. 2015-CA-6

        Plaintiff-Appellee                   :

                             :    Trial Court Case No. 13-TRD-001-642

v.                                          :

                             :    (Criminal Appeal from

DAVID H. ALEXANDER                          :     Darke County Municipal Court)

                             :

        Defendant-Appellant              :

                             :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 8th day of January, 2016.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Darke County Municipal prosecutor's Office, 504 South Broadway Street, 3rd Floor, Greenville, Ohio 45331
      Attorney for Plaintiff-Appellee

BARRY S. GALEN, Atty. Reg. No. 0045540, 111 West First Street, Suite 519, dAyton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} David Alexander appeals from the decision of the Darke County Municipal Court denying his Civ.R. 60(B) motion to vacate his conviction for speeding. We conclude

that the decision is against the weight of the evidence, so we reverse.

## I. Background

{¶ 2} On the night of March 11, 2013, a Darke County police officer pulled over a car for speeding. The driver told the officer that his name was David Alexander, and he told the officer that he had no proof of insurance. The officer issued "David Alexander" a ticket for speeding. A week-and-a-half later, on March 22, someone presented the Darke County Municipal Court with proof of insurance. The following month, on April 18, the ticket was paid by Alexander's good friend Derek Jasper, or more specifically, by Jasper's girlfriend, Hilary Fitzgerald. The case was disposed of as a "guilty waiver." Six months later, Alexander was stopped for a traffic offense and was told that his license had been suspended for the April speeding conviction and failure to show proof of insurance. Alexander claimed surprise. Alexander had bought the car that was stopped for speeding specifically for Jasper, and though Alexander was an owner, Alexander rarely, if ever, drove it because he had his own vehicle.

{¶ 3} Alexander moved to get the speeding conviction vacated under Civ.R. 60(B)(1). In an accompanying affidavit, Alexander avers that he was not the driver of the vehicle that March night and that he did not pay the fine or otherwise plead guilty to speeding. He also avers that the Darke County Sheriff told him that the driver did not present a driver's license but told the officer that his name was David Alexander and that his birth date was October 4, 1987. Alexander points out that he was actually born in 1985. Alexander claims that Jasper passed himself off as David Alexander. The trial court summarily denied the Civ.R. 60(B) motion without a hearing. Alexander appealed, and we, concluding that the trial court abused its discretion by not holding an evidentiary

hearing, reversed and remanded for a hearing. *State v. Alexander*, 2d Dist. Darke No. 2014-CA-5, 2014-Ohio-4859.

{¶ 4} At the hearing on remand, Jasper, Fitzgerald, and Alexander testified. Fitzgerald testified that an otherwise unidentifiable man named P.J. had used the car to pick her up from work and that it was P.J. who was driving when the car was stopped for speeding. She said that she later went with Jasper and paid the ticket using her debit card. Jasper too testified that it was he and Fitzgerald who paid the ticket. He said that he did not know this P.J. but that it was not uncommon for someone to use the car to pick up Fitzgerald from work. Jasper said that he did not know who was driving the car that March night, but he said that he did not believe that it was Alexander, because Alexander had his own vehicle. Alexander testified too, not surprisingly, that he was not the one driving that night.

{¶ 5} The trial court overruled the Civ.R. 60(B) motion. Alexander appealed.

## II. Analysis

{¶ 6} Alexander's sole assignment of error alleges that the trial court erred by overruling his Civ.R. 60(B) motion. The state did not file a brief in opposition.

{¶ 7} A trial court's Civ.R. 60(B) decision is reviewed for an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 8}** " 'To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.' " *State v. Minne*, 2d Dist. Montgomery No. 23390, 2010-Ohio-2269, ¶ 16, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. In our decision remanding the case for a hearing, we said of Alexander's motion:

> Here, Alexander's Civ.R. 60(B) motion alleged operative facts that could constitute mistake under Civ.R. 60(B)(1). Specifically, Alexander claims that Jasper caused the citing officer * * * and the State to mistakenly believe that Alexander was the driver of the vehicle. Alexander also claims that Jasper caused the State and the trial court to mistakenly believe that he paid the fine and admitted guilt. In support of his argument, Alexander provided an affidavit averring misinformation on the citation and Jasper's exclusive use of the vehicle that was stopped for speeding. * * *
>
> The veracity of Alexander's allegations is uncertain from the record. However, if it can be established that Jasper fraudulently identified himself and acted as Alexander, Alexander would have a potentially meritorious defense to the conviction.

*Alexander*, 2014-Ohio-4859, at ¶ 17-18.

**{¶ 9}** Alexander contends that the trial court's decision is against the manifest weight of the evidence, which, he says, shows that he was not driving the car when it was stopped for speeding. We agree. While the three witnesses disagreed on many things at the hearing, they all agreed that Alexander was not driving the car that night. Fitzgerald testified that she was in the vehicle when it was stopped and that a man named P.J. was driving. Jasper testified that he doubted Alexander was driving because Alexander had his own car. And Alexander, of course, testified that he was not driving. The trial court justified its decision this way:

> [T]here was no testimony as to the defendant's whereabouts on the date and time of the ticket. The ticketing officer did not testify as to who he actually ticketed. The ticketing officer was present in the courtroom and was subpoenaed to testify but was never called to the stand by either party. The testimony presented was conflicting in nature and the Court finds that the testimony of Derek Jasper was more believable than David Alexander.

*Judgment Entry* (Feb. 26, 2015). Although the evidence does not show where Alexander was that night, one could not find from the evidence that Alexander was driving the car. Indeed, there is essentially no evidence that puts him in the driver's seat of the car that night. Thus the trial court's implicit finding to the contrary is not supported by competent and credible evidence, and we need not defer to it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶ 10}** After looking at this case the second time around, however, we do not think that the primary issue in this appeal is whether Alexander was driving. Instead, the critical

issue is whether he participated in paying the ticket knowing that his name was on it. Traffic Rule 13(D)(3) provides that "[r]emittance of the fine and costs to the traffic violations bureau by any means other than personal appearance by the defendant at the bureau constitutes a guilty plea and waiver of trial whether or not the guilty plea and waiver of trial provision of the ticket are signed by the defendant." A Staff and Committee note to the rule explains that by remitting the fine and costs it may be reasonably assumed that the offender intends to plead guilty and waive trial. 1975 Staff and Committee Note, Traf.R. 13.[1] Consequently if Alexander knew his name was on the ticket and Alexander directed Jasper to pay it, his conviction is likely valid, even if he (Alexander) was not driving.

{¶ 11} At the time the ticket was issued, Alexander was insured under an SR-22 bond, which covers only the individual named on the policy. According to the trial court, though the ticket was not paid until April 18, proof of the bond was shown to the court on March 22. Jasper's testimony about how the ticket was taken care of differs from that of Alexander. Jasper testified that Alexander called him and asked him to pay the ticket,

---

[1] The note, written for a prior version of the rule, says:

> Rule 13(D)(2) is a new provision which permits a person charged with an offense which can be processed in the violations bureau to sign the guilty plea and waiver of trial provision of the ticket and mail the ticket and a check or money order for the amount of the fine and costs to the violations bureau. The section provides further that the remittance by mail of the fine and costs constitutes a guilty plea and trial waiver whether or not the ticket is signed by defendant. When the offender remits the specified fine and costs by mail without signing the plea and waiver, it is a reasonable assumption that the failure to sign was an inadvertence. The intent of the offender is amply demonstrated by the remittance. No useful purpose would be served by the expenditure of time and effort to secure the completion of the form under those circumstances.

giving Jasper his bond card to present. As to whether Alexander knew that the ticket was in his name, Jasper's testimony conflicts. During direct-examination, Jasper said that Alexander "told me that it was a ticket in his name." (Tr. 27). But on cross, Jasper said that Alexander did not explicitly tell him that it was his ticket:

Q. You go over to David Alexander's house, you get the insurance card from

him and he tells you to pay this ticket, correct?

A. Right.

Q. What's your assumption? That it's his ticket, right?

A. That ticket occurred, right.

Q. That it's his ticket.

A. Right.

Q. Is that what he told you?

A. No, he didn't tell me that.

(Tr. 35). Alexander testified that it was Jasper who came to him. Alexander said that Jasper told him that he (Jasper) had been cited for speeding and needed to show proof of insurance. Alexander said that he gave his bond card to Jasper, telling Jasper that it probably would not help, because the SR-22 bond did not cover the car. That was the last that Alexander heard of the matter until later in the year.

{¶ 12} We think that the evidence weighs against finding that Alexander directed Jasper to pay the ticket or knew that the ticket was in his name. It is difficult to believe that Jasper was so willing to pay someone else's ticket. It is even more difficult to believe that Jasper's girlfriend, who actually paid it, would be so willing. As we said earlier, there is no evidence that Alexander was the one driving that night. Although there is no direct

evidence that Jasper was driving either, there is strong circumstantial evidence of this fact. The car was de facto Jasper's. And if he was driving, Jasper had a strong motive for passing himself off as Alexander: at the time, Jasper did not have a valid driver's license or insurance. This would explain why Jasper readily took responsibility for the ticket and why Fitzgerald, Jasper's girlfriend, paid it. Moreover, we find it incredulous that a casual driver known only as "P.J." would know Alexander was a titled owner, or be able to give Alexander's birthdate when stopped. Of course, who was driving, and whether they were speeding has to be proved at a trial on the merits. At this stage, Alexander has only shown that he is entitled to relief from the speeding conviction.

{¶ 13} Given the evidence, the trial court's decision overruling the Civ.R. 60(B) motion is unreasonable and against the manifest weight of the evidence.

{¶ 14} The sole assignment of error is sustained.

### III. Conclusion

{¶ 15} The trial court's judgment overruling the Civ.R. 60(B) motion is reversed. If Civ.R. 60(B) is satisfied, the prior judgment is ordinarily vacated pending a trial on the merits. *See State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. Of Elections*, 67 Ohio St.3d 134, 136, 616 N.E.2d 869 (1993). Accordingly, the April 18, 2013 speeding conviction is vacated, and this case is remanded for trial.

. . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Jesse J. Green

Barry S. Galen
Hon. Julie L. Monnin